PER CURIAM.
 

 Diana Hofer appeals from a judgment of the district court that affirmed the bankruptcy court’s determination that Merchants State Bank of Freeman, South Dakota (Merchants State), was a secured creditor with respect to the proceeds of collateral covered by a security agreement signed by Jennis Hofer, Diana’s husband. We affirm.
 

 After their marriage in the early 1960’s, Diana and Jennis Hofer began farming near Freeman, South Dakota, where they became customers of the First National Bank in Freeman. The Hofers switched their banking business to Merchants State in December of 1982. On December 10, 1982, Jennis signed a security agreement in favor of Merchants State covering all personal property on the Hofers’ farm. Mer
 
 *272
 
 chants State advanced funds to Jennis on that date for the purpose of paying the Hofers’ debt to the First National Bank of Freeman. Thereafter, Merchants State made advances of credit for the Hofers’ farming operation through May of 1984. Jennis signed most of the notes for these advances, but occasionally Diana signed notes also.
 

 In May of 1984, Jennis was incarcerated on criminal charges. Thereafter, Diana operated the farm, including transacting business with Merchants State. By October 15, 1984, all of the notes coming due at Merchants State subsequent to Jennis’ incarceration had been renewed by new notes signed by Diana.
 

 In January of 1985, Diana sold some livestock, depositing the proceeds of the sale ($10,032.65) in an account in her own name in the First National Bank of Freeman. Merchants State thereupon made claim to these proceeds, contending that they were proceeds from the sale of collateral secured by the December 1, 1982, security agreement executed by Jennis.
 

 On January 31, 1985, Diana filed a Chapter 11 bankruptcy petition. On February 19, 1985, she commenced this adversary proceeding, seeking a determination that Merchants State had no security interest in the proceeds of the January 1985 sale of livestock. The case was submitted to the bankruptcy court on stipulated facts and on the depositions of Diana and of Harris Hofer, president of Merchants State. After finding that the renewal notes signed by Diana were not intended to work a novation of the previous indebtedness of Jennis and that Diana was estopped by her acceptance of the continued financing from Merchants State to assert that the security agreement signed by Jennis in December of 1982 did not cover the proceeds of the cattle sold by her, the bankruptcy court concluded that Merchants State was a secured creditor with respect to the proceeds of the cattle sale.
 

 After her motion to reconsider or to amend the judgment was denied by the bankruptcy court, Diana appealed to the district court, which affirmed the bankruptcy court’s decision and dismissed the appeal.
 

 Citing our decision in
 
 In re Davison,
 
 738 F.2d 931 (8th Cir.1984), Diana contends that because she owned the cattle and other personal property in joint tenancy with Jennis and because she had never signed a security agreement, Merchants State had no security interest in the proceeds of the cattle sale to the extent of her joint ownership interest in the cattle. From our reading of the rather sparse record in this case, however, it appears that Diana did not present this issue to the bankruptcy court, either by her complaint or by her motion to reconsider or to amend the judgment. Likewise, she did not raise it in her designation of issues appealed to the district court. Accordingly, we will not consider the issue on appeal.
 

 Diana also contends that the trial court erred in finding that her execution of the several renewal notes following Jennis’ incarceration did not effect a novation of the original indebtedness secured by the December 1982 security agreement. Our review of the record, however, persuades us that the bankruptcy court did not clearly err in finding that no novation had occurred.
 

 The law regarding novation is set forth in the following provisions of South Dakota Codified Laws:
 

 SDCL 20-7-5. Novation is the substitution by contract of a new obligation for an existing one and is subject to the rules concerning contracts in general.
 

 SDCL 20-7-6. Novation is made by the substitution of a new obligation between the same parties, with intent to extinguish the old obligation.
 

 SDCL 20-7-7. Novation is made by the substitution of a new debtor in place of the old one, with intent to release the latter.
 

 South Dakota follows the general rule that novation is never to be presumed and that in order to effect a novation there must be a clear and definite intention on the part of all concerned that that is the purpose of the agreement between the par
 
 *273
 
 ties. The question in every case is whether the parties intended by their arrangement to extinguish the old debt and rely entirely on the new or to keep the old debt alive and accept the new merely as further security. Moreover, whether a novation has occurred is a question of fact if there is any supporting evidence and the terms of the agreement are equivocal or uncertain.
 
 Hyde v. Hyde,
 
 78 S.D. 176, 99 N.W.2d 788, 791-92 (1959);
 
 see also
 
 58 Am.Jur.2d
 
 Novation
 
 § 20 (1971).
 

 In its memorandum decision, the bankruptcy court stated that the parties had stipulated that had Harris Hofer been called to testify he would have testified that he had not agreed to any change in the previously existing lending relationship between the bank and Jennis and Diana and that the notes currently outstanding were, in his opinion, renewals of the pre-existing debt. Diana herself testified that her position in the adversary proceeding in bankruptcy court was not based upon anything negotiated with the bank but rather was based upon the post-petition advice of her attorneys.
 

 We conclude, then, that the bankruptcy court did not err in holding that no novation had been effected and that the bank’s security interest attached to the proceeds of the January 1985 cattle sale. In view of this holding, we deem it unnecessary to consider the alternative ground upon which the bankruptcy court based its decision, that of equitable estoppel.
 

 The judgment of the district court affirming the judgment of the bankruptcy court is affirmed.