**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**
No.  96-4196

First Bank Investors' Trust,       *
     *
        Creditor-Appellant,      *  Appeal from the United States
     *  District Court for the
    v.                   *  Western District of Missouri
     *
Tarkio College,           *
     *
        Debtor-Appellee.      *
     *

_____

Submitted:  September 10, 1997
Filed: November 12, 1997

_____

Before BOWMAN, Circuit Judge, HENLEY, Senior Circuit Judge[1], and MORRIS SHEPPARD ARNOLD, Circuit Judge.

_____

BOWMAN, Circuit Judge.

This case arises from Tarkio College's bankruptcy proceeding.  The question presented is whether First Bank Investors' Trust (FBIT), as an oversecured creditor, is entitled to recover interest at the basic contracted-for rate of twelve percent or at the post-maturity rate of sixteen percent on the unpaid balance of a promissory note

_____

[1]Judge Henley died on October 18, 1997.  This opinion is consistent with his vote at the panel's conference following oral argument of the case on September 10, 1997.

executed by Tarkio to FBIT's predecessor-in-interest.  The decision of the District Court,[2] affirming the decision of the Bankruptcy Court,[3] limits FBIT's recovery to the twelve percent rate of interest.  FBIT appeals.  We affirm.

## I.

Tarkio College executed a promissory note in the amount of $900,000 secured by a Deed of Trust in favor of First Bank of Butler on June 29, 1990.  Tarkio further guaranteed the note by granting First Bank a security interest in, among other property and intangibles, all claims or potential claims against third parties--one of which was an ultimately successful malpractice claim against the accounting firm of Deloitte and Touche.

The promissory note provided for repayment of the loan in twenty quarterly installments beginning on October 1, 1990, and for accrual of interest on the unpaid balance of the loan at twelve percent per year.  The note further provided that it would mature on July 1, 1995, or on an earlier date if Tarkio defaulted and First Bank thereafter elected to accelerate the note.  Default under the note included failure to remit a quarterly installment payment on time or in the full amount due.  Any unpaid balance remaining under the note after the maturity date of July 1, 1995, or after acceleration of the loan by First Bank would accrue interest at a "post-maturity rate" of sixteen percent per year.[4]

---

[2]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

[3]The Honorable Arthur B. Federman, United States Bankruptcy Judge for the Western District of Missouri.

[4]The pertinent language of the note provides:  "POST MATURITY RATE:  For purposes of deciding when the 'Post Maturity Rate' . . . applies, the term 'maturity' means the following: . . . (3) in all other cases, the date of the last scheduled payment of principal or the date you accelerate payment on the note, whichever is earlier."

Tarkio failed to make the quarterly payment due on January 1, 1991. By letter dated May 14, 1991, First Bank informed Tarkio's president that it considered the loan in default:

> This is to advise you, for the college, that First Bank deems Tarkio College in default of its promissory note to First Bank with respect to the referenced loan transaction. Accordingly First Bank requests Tarkio College to now come forward within the next ten (10) days with full payment of the unpaid principal, $862,396.39, and unpaid and accrued interest of $38,793.70 as of this day, 05/14/91. Interest is accruing at a rate of $283.528 per day.

Three days later, on May 17, 1991, Tarkio filed its Chapter 11 bankruptcy petition. First Bank filed its proof of claim with the bankruptcy court on September 20, 1991. On November 13, 1991, Tarkio filed a Plan of Liquidation requesting leave to liquidate its assets and use the proceeds to pay its creditors. First Bank Investors' Trust, the appellant, acquired Tarkio's note from First Bank in September 1992, thereby becoming First Bank's successor-in-interest on the note. Pursuant to Tarkio's liquidation plan approved by the Bankruptcy Court and to an order lifting the automatic stay provisions of 11 U.S.C. § 362(a) (1994), Tarkio liquidated real and personal property that was subject to FBIT's lien and paid the resulting proceeds over to FBIT in partial satisfaction of the note.

In January 1996, during the pendency of the bankruptcy proceedings, Tarkio reached a settlement with Deloitte and Touche of Tarkio's malpractice claim. As a result of this settlement, Tarkio received approximately $3.5 million that was immediately available for payment to its creditors. Pursuant to the security agreement

granting FBIT (as First Bank's successor-in-interest) a security interest in the malpractice action, FBIT, which originally appeared to be an undersecured creditor, became an oversecured creditor.[5]

On February 20, 1996, shortly after receipt of the settlement funds, Tarkio filed a motion with the Bankruptcy Court seeking to pay in full the amount owed to FBIT on the note as of January 8, 1996. Basing its calculations on documents prepared by FBIT over the course of the bankruptcy proceedings and excluding from these sums certain fees and other costs it deemed impermissible, Tarkio proposed in its motion that it owed a balance of $233,063.53 on the note, including interest calculated at the fixed yearly rate of twelve percent or $76.62 per day. FBIT responded to this motion by asserting that the post-maturity interest rate of sixteen percent per year was triggered by FBIT's May 14, 1991, letter to Tarkio's president. According to FBIT's calculations, the balance due under the note as of January 8, 1996, was $445,481.62, including interest calculated at the post-maturity rate of sixteen percent or $195.280 per day. FBIT, as an oversecured creditor, also asserted claims to payment for certain fees and costs incurred as a result of the bankruptcy proceedings.

The Bankruptcy Court conducted an evidentiary hearing on March 20, 1996, and admitted into evidence over FBIT's objections certain letters and affidavits that were prepared by FBIT representatives after May 14, 1991, and that calculated the amounts due on the note using the twelve percent rather than the sixteen percent interest rate. Tarkio claimed that it relied on these documents in computing the total amount due under the note and that these documents evidenced FBIT's belief that the note had not been accelerated. The Bankruptcy Court granted in part Tarkio's motion to pay FBIT's

---

[5]Under the Bankruptcy Code, an oversecured creditor (one whose secured claim is secured by property with a value in excess of the amount of the claim) is entitled to interest on the claim and "reasonable fees, costs, or charges provided for under the agreement" between the parties. 11 U.S.C. § 506(b) (1994).

claim in full, finding that the May 14, 1991, letter failed to accelerate the note. The Bankruptcy Court also granted in part FBIT's motion for payment of certain fees and costs.[6] The District Court affirmed and FBIT appeals.

On appeal, FBIT argues that the Bankruptcy Court erred (1) in finding that the May 14, 1991, letter failed to accelerate the promissory note; (2) in ruling that the letters and affidavits offered by Tarkio in support of its claim that the twelve percent interest rate applies were admissible; and (3) in failing to consider FBIT's claim that the post-maturity interest rate of sixteen percent should apply to the outstanding balance due after the note's stated maturity date of July 1, 1995. "In bankruptcy cases, this court sits as a second court of review and applies the same standards as the district court." Southern Technical College, Inc. v. Hood, 89 F.3d 1381, 1383 (8th Cir. 1996).

**II.**

FBIT first argues that the Bankruptcy Court erred in finding that the promissory note was not accelerated by the letter from First Bank dated May 14, 1991. FBIT asserts that this letter effectively accelerated the maturity date of the note and triggered the default post-maturity interest rate of sixteen percent per year effective on May 24, 1991. We review the Bankruptcy Court's determination of this state-law issue de novo, and agree that the May 14, 1991, letter was insufficient to effectuate acceleration.[7]

---

[6]FBIT does not challenge on appeal the calculation of fees and costs.

[7]Missouri courts have not addressed specifically the question of whether a determination that a creditor's actions do or do not qualify as an unequivocal manifestation of the intent to exercise an option to accelerate is a question of law to be reviewed de novo or a finding of fact to be reviewed for clear error. Because, however, the question presented is essentially a question of contract interpretation, we agree with the District Court that the Supreme Court of Missouri would take the position that whether a creditor's notice of default is ambiguous as it relates to acceleration is a question of law to be reviewed de novo. See Blackman v. Blackman, 767 S.W.2d 54, 59 (Mo. Ct. App. 1989).

-5-

Under Missouri law, a debtor's failure to pay an obligation on the due date does not automatically accelerate the entire debt, regardless of the existence of an acceleration clause in the agreement. See Capital City Motors, Inc. v. Thomas W. Garland, Inc., 363 S.W.2d 575, 578 (Mo. 1962). An acceleration clause does nothing more than provide a creditor with the option to treat the entire debt as immediately due. See id. Exercising that option requires that the creditor perform some unequivocal, affirmative, overt act evidencing its intent to accelerate payment of the debt. See Don Anderson Enters., Inc. v. Entertainment Enters., Inc., 589 S.W.2d 70, 72 (Mo. Ct. App. 1979); Spires v. Lawless, 493 S.W.2d 65, 73 (Mo. Ct. App. 1973). Furthermore, a declaration of intent to accelerate must be followed by some affirmative action toward enforcing the creditor's declared intent to accelerate. See Spires, 493 S.W.2d at 73. Missouri courts require particularity in effectuating acceleration because "the acceleration of the maturity of an installment note is a harsh remedy." Morris v. Granger, 675 S.W.2d 15, 17 (Mo. Ct. App. 1984) (construing due on sale acceleration clause). "A right to accelerate . . . should be clear and unequivocal, and if there is a reasonable doubt as to the meaning of the terms employed preference should be given to the construction which will . . . prevent acceleration of maturity." Id.

We agree with the Bankruptcy Court that First Bank's May 14, 1991, letter was ambiguous and, therefore, was not a "clear and unequivocal" statement of the bank's intent to accelerate the loan. First Bank applied the contractual interest rate of twelve percent in computing the amounts noted in its May 14, 1991, letter as immediately due and payable. The letter did not state clearly when, if ever, the post-maturity interest rate of sixteen percent would apply to the outstanding balance of the loan. In fact, First Bank failed to refer to its contractual option to assert the post-maturity interest rate, the imminent imposition of the post- maturity interest rate after the contractually-identified incident of default, or the date such applicability was effective. Because First Bank specifically calculated the amounts due under the note using the contractual twelve

percent interest rate and neglected to assert its right to the default interest rate of sixteen percent effective May 24, 1991, or sometime thereafter, the letter was ambiguous and did not comply with Missouri's requirement that the harsh remedy of acceleration be effectuated only by a clear, unequivocal, and affirmative act evidencing an intent to accelerate. Furthermore, because the May 14, 1991, letter did not operate to accelerate the maturity of Tarkio's note effective May 24, 1991, and because the automatic stay of 11 U.S.C. § 362(a)(6) (applicable upon Tarkio's May 17, 1991, petition for bankruptcy protection) prevented FBIT from thereafter taking any affirmative action to accelerate maturity of the note, the note has never been accelerated. The Bankruptcy Court did not err in concluding that First Bank's ambiguous letter failed to effectuate acceleration of Tarkio's debt.

**III.**

FBIT next argues that the Bankruptcy Court erred in admitting into evidence certain documents prepared by representatives of FBIT. These documents tend to support Tarkio's claim that the promissory note was never accelerated and that the twelve percent interest rate therefore applies to the outstanding balance of the loan. FBIT claims that the Bankruptcy Court improperly considered this parol evidence in construing the unambiguous terms of the promissory note. Tarkio, on the other hand, claims that the Bankruptcy Court admitted these documents to determine whether the ambiguous May 14, 1991, letter accelerated the note and triggered the post-maturity interest rate. FBIT specifically finds error with the admission of a February 9, 1993, letter to Tarkio from FBIT's attorney itemizing the various payments made by Tarkio from December 30, 1990, to February 5, 1993, and calculating the outstanding balance due under the note over this period using the twelve percent interest rate. FBIT also objects to the admission of an affidavit prepared by a member of FBIT's board of trustees and filed with the Bankruptcy Court that calculates the obligations owed by Tarkio from February 1, 1991, through August 24, 1993, using a twelve percent interest

-7-

rate.  We review the Bankruptcy Court's decision to admit evidence for abuse of discretion.  <u>Justice v. Carter</u>, 972 F.2d 951, 956 (8th Cir. 1992).

Under Missouri law, extrinsic evidence is inadmissible to vary or contradict the terms of an unambiguous and complete written instrument.  <u>See</u> <u>Norden v. Friedman</u>, 756 S.W.2d 158, 163 (Mo. 1988) (en banc).  Extrinsic evidence is admissible, however, to assist in the interpretation of an ambiguous writing.  <u>See</u> <u>Blackman v. Blackman</u>, 767 S.W.2d 54, 59 (Mo. Ct. App. 1989).  The Bankruptcy Court, having determined that the May 14, 1991, letter was ambiguous, admitted this evidence as an aid to resolution of the letter's ambiguity, i.e., whether the letter effectively exercised FBIT's option to accelerate the maturity of the note.  The Bankruptcy Court observed that, despite FBIT's assertions that the post-maturity interest rate was triggered by the May 14, 1991, letter, FBIT repeatedly utilized the twelve percent interest rate in these documents purportedly calculating Tarkio's remaining debt balance.  Because we agree, as previously mentioned, that the May 14, 1991, letter was ambiguous and was not a clear and unequivocal manifestation of FBIT's intent to accelerate, the Bankruptcy Court properly admitted these documents to assist in interpreting the letter's meaning.  We find no abuse of discretion in the Bankruptcy Court's admission of this extrinsic evidence to resolve the ambiguity inherent in the May 14, 1991, letter.

## IV.

Finally, FBIT argues that if it is not entitled to interest at the sixteen percent post-maturity rate from the alleged acceleration date of May 24, 1991, it is entitled to such interest from July 1, 1995, the stated maturity date of the promissory note.  The Bankruptcy Court did not address this argument, and the District Court concluded that the claim was foreclosed on appeal due to FBIT's failure to raise it during the bankruptcy proceedings.  As a general rule, we will not consider issues not presented to the bankruptcy court in the first instance.  <u>See</u>  <u>Pester Ref. Co. v. Mapco Gas Prods., Inc.</u> (<u>In re Pester Ref. Co.</u>), 845 F.2d 1476, 1486 (8th Cir. 1988); <u>Hofer v. Merchants</u>

State Bank, 823 F.2d 271, 272 (8th Cir. 1987) (per curiam) (noting that issue would not be considered on appeal where debtor did not present issue to bankruptcy court by complaint or by motion to reconsider and did not raise issue in designation of issues appealed to district court).  We may, however, consider an issue for the first time on appeal "when the argument involves a purely legal issue in which no additional evidence or argument would affect the outcome of the case," Universal Title Ins. Co. v. United States, 942 F.2d 1311, 1314-15 (8th Cir. 1991), or where manifest injustice might otherwise result, see Singleton v. Wulff, 428 U.S. 106, 121 (1976).

In its objection filed with the Bankruptcy Court to Tarkio's motion to make full payment of amounts due under the promissory note, FBIT repeatedly asserted that it was entitled to interest at the post-maturity rate as a result of Tarkio's default under the terms of the note and FBIT's subsequent acceleration of the note.  Missing from this motion (filed with the Bankruptcy Court on March 8, 1996--well after the maturity date of July 1, 1995),  was any assertion that FBIT was entitled to the post-maturity interest rate as of July 1, 1995.  See, e.g., Objection to Motion at 2 ("The Note provides for post-maturity interest of sixteen percent per annum and . . . defines maturity as occurring upon acceleration of the indebtedness. . ."); id. at 6 ("The Note was accelerated due to the default of Debtor.").  During the bankruptcy proceeding, FBIT rested entirely on its argument that the May 14, 1991, letter effectively accelerated the note and triggered the post-maturity interest rate as of May 24, 1991.  See Transcript, March 20, 1996, at 8 (opening statement by attorney for FBIT) ("It's our contention that there is a 16 percent post-maturity rate that applied from May the 24th, 1991, forward, that it was an agreed- upon rate, [and] that it was reasonable . . ..").  After careful review of the record before the Bankruptcy Court, we conclude that the issue of FBIT's entitlement to the post-maturity interest rate as of July 1, 1995, was not adequately raised.

FBIT asserts that, because it attached a copy of the promissory note to its proof of claim filed with the Bankruptcy Court and because Tarkio's witness at the

bankruptcy hearing testified that the note, on its face, provided for a July 1, 1995, maturity date, this claim was raised before the Bankruptcy Court. We disagree. As we stated above, FBIT's motion before the Bankruptcy Court asserted only a claim to post- maturity interest based on Tarkio's default and the purported acceleration notice of May 14, 1991, not a claim to post-maturity interest based on the maturity of the note on July 1, 1995. The witness's testimony during the bankruptcy hearing that the promissory note specified a July 1, 1995, maturity date was insufficient to raise this issue before the Bankruptcy Court. It is not the duty of a trial court to ferret out and consider claims that have not expressly been asserted by the putative claimant.

Furthermore, consideration of FBIT's new claim would raise factual issues not fully developed in the record before the Bankruptcy Court. The record is insufficient to determine whether FBIT, which repeatedly asserted only the applicability of the twelve percent interest rate in documents addressed to Tarkio, effectively waived enforcement of the post-maturity interest rate effective July 1, 1995. Similarly, the record has not been developed with respect to the reasonableness of the post-maturity interest rate of sixteen percent under 11 U.S.C. §506(b). Likewise, we cannot conclude that refusal to consider this claim for the first time on appeal will result in manifest injustice, particularly since, in spite of a number of opportunities to raise this claim before the Bankruptcy Court, FBIT neglected to do so. Instead, FBIT pursued only its claim that the sixteen percent rate applied effective May 14, 1991, as a result of Tarkio's default. The maturity date of July 1, 1995, passed during the pendency of the bankruptcy proceedings, and FBIT nonetheless neglected to assert that it was entitled to the post-maturity interest rate as a result of the note's maturity. We conclude that because FBIT failed to raise this claim before the Bankruptcy Court, it is barred from raising it for the first time on appeal.

**v.**

For the foregoing reasons, we affirm the judgment of the District Court affirming the judgment of the Bankruptcy Court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT