# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2692

_____

Orion Financial Corp. of South Dakota,      *
a South Dakota corporation,                 *
                                            *
               Appellee,                    *
                                            *
        v.                                  *
                                            *
American Foods Group, Inc.,                  *
a Delaware Corporation,                     *
                                            *
               Appellant.                   *


_____

No. 00-3064

_____

Appeals from the United States
District Court for the
District of South Dakota.

Orion Financial Corp. of South Dakota,      *
a South Dakota corporation,                 *
                                            *
               Appellant,                   *
                                            *
        v.                                  *
                                            *
American Foods Group, Inc.,                  *
a Delaware Corporation.                     *
                                            *
               Appellee.                    *

_____

Submitted:  October 17, 2001

Filed:  February 25, 2002 (Corrected 3/4/02)
_____

Before WOLLMAN,[1] Chief Judge, MURPHY, and RILEY, Circuit Judges.
_____

WOLLMAN, Chief Judge.

This appeal arises from a contract dispute.  Both parties prevailed on some of their claims, and both appeal.  We affirm in part, reverse in part, and remand.

## I.

Orion Financial Corp. (Orion) and American Foods Group, Inc. (American Foods) entered into a consulting agreement (the Agreement) on April 1, 1994, under which Orion agreed to procure grants and loans for the benefit of American Foods. Under the Agreement, Orion is entitled to a flat rate fee and "success fees" determined as a percentage of each grant or loan amount Orion procured.  The Agreement defines various categories of grants and loans in subsections (b)(1) to (b)(6) and sets forth applicable success fees for each type.  American Foods terminated the Agreement effective April 27, 1995.  The Agreement provides that Orion is entitled to full success fees for any loans or grants American Foods received within one year of termination and that it is entitled to fifty percent of the applicable success fees for any loans and grants received between twelve and eighteen months after termination.

---

[1]The Honorable Roger L. Wollman stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on January 31, 2002.  He has been succeeded by the Honorable David R. Hansen.

As the district court observed, the definitions found in (b)(1) to (b)(6) of the Agreement are not a model of clarity. Only section (b) and subsections (b)(1), (b)(5) and (b)(6) are relevant to this appeal. These sections state:

> b) A success fee [is] to be paid upon the completion of each component of financing . . . . American Foods shall not be obligated to pay Orion success fees in excess of $350,000 . . . . The success fees shall be paid based on the following:
>
> 1) Upon the completion of new senior secured debt, subordinated debt, convertible debt or equity. This success fee will be three and one half [percent] (3.5%) on the first $2,000,000 of any such debt or equity placed and four and one half percent (4.5%) of any such additional debt or equity placed. Subordinated debt, convertible debt or equity shall be any capital which is not secured by a perfected first security interest in real estate, capital equipment or accounts receivable and inventory.
>
> . . .
>
> 5) Upon the completion of any grant or forgivable loans provided by the State of South Dakota or any other governmental entity related to the John Morrell & Co. incentive package. This success fee will be three and one half percent (3.5)% [sic] of any such financing above $750,000.
>
> 6) Upon the completion of any loans provided by the State of South Dakota or any other governmental entity related to the John Morrell & Co. incentive package. This success fee will be two percent (2%) of any such financing above $2,000,000.

American Foods received numerous grants and loans during the period covered by the Agreement. It paid the base fee and some success fees, as follows. First, it paid $61,250 on a $2.5 million forgivable loan from the Governor's Office of Economic Development under (b)(5). This fee is not disputed. American Foods also

paid success fees of $33,250 on a $950,000 loan from the Greater Huron Development Corporation under (b)(5) (Greater Huron Development Corp. loan). American Foods counterclaimed for refund of this payment. The district court granted summary judgment to Orion on the counterclaim, and American Foods appeals.

Orion sued to recover success fees on several other instances of funding. The district court granted fees on the following amounts. The district court placed under subsection (b)(1) a renegotiated revolving loan from CIT corporation (CIT loan) and a capital lease from Cryovac (Cryovac lease); under subsection (b)(5) a $250,000 grant to the City of Huron, South Dakota (Huron grant); and under subsection (b)(6) a $2.7 million loan to the City of Huron, South Dakota (Huron loan), a $100,000 loan from the City of Mitchell, South Dakota (Mitchell loan), a $200,000 loan from the Areawide Business Council for the City of Mitchell (Areawide loan), and a $750,000 REDI loan from the South Dakota Board of Economic Development to American Foods (REDI loan). The district court granted success fees on all these transactions on summary judgment, except on the Cryovac lease, which it granted after trial. American Foods appeals from all these rulings. Orion appeals from only some of them, claiming that it should have received more fees on some of the loans.

In addition, the district court granted prejudgment interest to Orion from the date Orion demanded payment from American Foods. On appeal, Orion claims that it should have been awarded prejudgment interest from earlier dates.

Finally, Orion also claims it should receive attorney fees and collection costs as provided in the Agreement. The district court held that the attorney fees provision in the contract violated South Dakota law and denied the request.

## II.

We review the issues on which the district court granted summary judgment <u>de novo</u>. <u>Henerey v. City of St. Charles</u>, 200 F.3d 1128, 1131 (8th Cir. 1999). Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. <u>Id.</u>; Fed. R. Civ. P. 56(c). We review the district court's factual findings at trial under the "clearly erroneous" standard, and its legal conclusions <u>de novo</u>. <u>Chicago Title Ins. Co. v. FDIC</u>, 172 F.3d 601, 604 (8th Cir. 1999).

In a diversity case, the contract must be construed according to state law. <u>Barry v. Barry</u>, 172 F.3d 1011, 1013 (8th Cir. 1999). We review the district court's interpretation of state law <u>de novo</u>. <u>Michalski v. Bank of Am. Ariz.</u>, 66 F.3d 993, 995 (8th Cir. 1995) (citing <u>Salve Regina Coll. v. Russell</u>, 499 U.S. 225, 231 (1991)). As a federal court, our role in diversity cases is to interpret state law, not to fashion it. Thus, if the state law is unsettled, it is our duty to apply the rule we believe the South Dakota Supreme Court would follow. <u>Novak v. Navistar Int'l Transp. Corp.</u>, 46 F.3d 844, 847 (8th Cir. 1995).

In South Dakota, whether a contract is ambiguous is a matter of law. <u>Ducheneaux v. Miller</u>, 488 N.W.2d 902, 909 (S.D. 1992). A contract is ambiguous if "it is reasonably capable of being understood in more than one sense." <u>Id.</u> (quotation omitted). A contract is not ambiguous just because the parties disagree on the meaning; rather, the contract must be ambiguous to an objective observer. <u>Id.</u> Only if a court finds that a contract is ambiguous may it consider extrinsic evidence to determine the meaning of the contract. <u>Id.</u>

Before turning to the specific provisions of the Agreement, we must dispense with the parties' differing interpretations of the threshold under the success fee provisions. As to particular loans, American Foods repeatedly argues that success fees should not be awarded because each individual loan or grant at issue did not meet the applicable minimum threshold provision. The district court employed a different method: it applied the minimum threshold to the aggregate amount of funding under the relevant subsection. We conclude that the district court did not err in adopting this approach, because the threshold amounts are phrased in terms of "any such financing above" a certain level. An objective observer would conclude that the only reasonable way to read this phrase is that Orion is entitled to success fees on the aggregate level of funding it produced, for otherwise Orion would have no incentive to procure lower level loans and grants.

With that in mind, we will examine each subsection in turn, first considering the issues of interpretation relevant to that subsection and next the individual loans and grants the district court placed under that subsection.

## A. Fees under subsection (b)(1)

As described above, the Agreement contains a clause providing success fees for loans and grants received after the Agreement was terminated. American Foods argues that the post-termination success fee clause allows such fees only on loans and grants that "relate to the John Morrell & Co. incentive package" that are covered by subsections (b)(5) and (b)(6) and does not allow fees on loans that fall under (b)(1). This argument is contrary to the plain meaning of the Agreement. The post-termination clause refers to loans "such as" those relating to the Morrell package. An objective reader would interpret the phrase "such as" to mean "for example." American Foods would have us read the phrase "such as" to exclude all other possibilities. Because American Foods's interpretation is contrary to the plain

meaning of the contract, we reject it. Accordingly, the district court did not err in awarding post termination fees under (b)(1).

1.      The CIT Loan

On September 1, 1992, CIT provided American Foods with a revolving loan with a maximum credit of $26 million. After rising temporarily, the loan's maximum credit returned to $26 million as of the beginning of 1994. In June of 1994, Troy Jones, president of Orion, and an associate accompanied Carl Kuehne, CEO of American Foods, to New York for a meeting with CIT officials to renegotiate the terms and conditions of the revolving loan. After the meeting, CIT reduced the interest rate, extended the term, increased the sublimits within the overall revolving loan, and increased the overall maximum credit to $35 million.

American Foods contends that prior to going to New York, Kuehne and Jones orally agreed that Orion would not expect compensation for any work on the CIT loan, other than expenses of the trip. Such an agreement would constitute an oral modification of the Agreement, which requires additional consideration, or the doing or the suffering of something not required to be done or suffered by the terms of the writing. Jones v. Longerbeam, 119 N.W. 1000, 1002 (S.D. 1909). The Agreement already required American Foods to pay Orion's travel expenses, so in taking Jones along and paying for his trip American Foods did not do anything it was not already required to do. Furthermore, belying American Foods's claim that Jones did no work on the renegotiated CIT loan, Kuehne sent Jones a note after the meeting thanking him for his help in New York, which was "instrumental in our successful meeting." Thus, Orion is entitled to a success fee for the CIT loan.

American Foods also contends that because the term "new senior secured debt" in (b)(1) is ambiguous, the district court should have admitted the testimony of

American Foods's expert to explain the term. American Foods argues that the CIT loan was a working capital loan, not "new senior secured debt." However, the term "new senior secured debt" in the Agreement unambiguously includes working capital loans. The Agreement specifically includes working capital loans and excludes only loans from a different company. Accordingly, because the term "new senior secured debt" includes the CIT loan, the district court did not err in excluding testimony from American Foods's expert.

American Foods also argues that Orion should be estopped from asking for a success fee on the CIT loan because it reasonably relied on Orion's promise not to ask for a success fee. American Foods did not raise this argument in the district court, however, and thus we will not consider it for the first time on appeal. See Colonial Ins. Co. of Cal. v. Spirco Envtl., Inc., 137 F.3d 560, 561 (8th Cir. 1998). We consider newly raised issues only if they are purely legal and no additional factual development is necessary, or where manifest injustice would otherwise result. First Bank Investors' Trust v. Tarkio Coll., 129 F.3d 471, 477 (8th Cir. 1997). Neither exception applies here.

American Foods's final argument on the CIT loan is that the course of performance between the parties indicates that no success fee was owed on the CIT loan. As evidence of this, American Foods points out that Orion did not assert that a fee was owed until April 1995, months after the New York meeting, despite having billed American Foods for other success fees in the interim. American Foods cites § 202 of the Restatement (Second) of Contracts as the only authority for this proposition. That section provides that where "an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course accepted or acquiesced in without objection is given weight in the interpretation of the agreement." Restatement (Second) of Contracts § 202(4). This language simply does

not cover Orion's delay in billing American Foods for the CIT loan. The "occasion for performance" in the Agreement were Orion's work on individual loans, not its sending of bills. Orion completed its duties, and its delay in sending a bill is irrelevant to the question whether the contractual language covers the CIT loan.

Because Orion is entitled to success fees for the renegotiated CIT loan, we must consider the amount of the fees. Orion argues that it earned a success fee on the loan's entire $36 million maximum credit and that the fee was earned as soon as the amendments to the loan and security agreement were executed. Orion argues that the district court erred by not considering the additional benefits to American Foods, such as the lower interest rates and the deferral of repayment. Orion's argument that the extension of credit on the entire amount creates new debt is unpersuasive, because the purpose of the contract was to have Orion find new funding sources. The district court was correct in ruling that the success fee provisions do not cover the negotiation of more favorable terms. The negotiation of more favorable terms was presumably covered by the flat rate fee.

The only new debt is the increase in the revolving loan's maximum credit, so at most Orion would be entitled to fees on the $9 million increase. Orion contends that it became entitled to success fees on the $9 million increase in maximum credit upon the execution of the amendments to the CIT loan. The district court disagreed and determined the new secured debt was not "completed" until CIT actually advanced the loan funds to American Foods. The district court calculated the success fee as of October 20, 1996, when the outstanding loan balance was the highest within an 18-month period after termination of the Agreement. According to the Agreement, Orion was entitled to 50 percent of the success fee on any funding received by American Foods within a period of more than twelve months but less than eighteen months following termination of the Agreement.

Under the terms of the Agreement, American Foods was obligated to pay Orion a success fee "upon the completion of each component of financing." We agree with Orion's position that "completion" of the CIT loan occurred upon execution of the Second Amended Loan and Security Agreement. Once executed, the revolving loan's increase in maximum credit became effective, and CIT was contractually obligated to advance funds to American Foods in an amount up to $35 million. Upon execution of the amendment documents, the $9 million of increased financing was immediately available to American Foods for use in its business planning and in its representations to suppliers, customers and shareholders. As of the execution date, Orion had fully performed its obligations under the Agreement. Nothing further remained for "completion."

Accordingly, we conclude the district court's award of success fees on the CIT loan was inconsistent with the plain language of the Agreement. Success fees should be awarded at 100 percent under subsection (b)(1). We thus reverse and remand for entry of a revised award as to the renegotiated CIT loan, subject to the Agreement's cap on success fees.

2.    The Cryovac capital lease

After trial, the district court considered several equipment leases and held that Orion provided tangible services as to only one of them--the Cryovac lease--and awarded a success fee award for that lease. American Foods asserts that there was insufficient evidence to support this award.

The district court evaluated Jones's testimony that he provided services on the Cryovac lease and found it to be credible, a finding that we cannot say was clearly erroneous. Accordingly, we affirm this award.

-10-

**B.      Fees under subsection (b)(5)**

Subsections (b)(5) and (b)(6) provide success fees for loans or grants "related to the John Morrell & Co. incentive package" (Morrell package).  This phrase is not defined in the Agreement.  American Foods argues that because the definition of the Morrell package is ambiguous, the district court should not have granted summary judgment on most of the loans and grants under these two subsections.

The district court agreed that the definition of the Morrell package was ambiguous, but ruled that deposition testimony from Kuehne and an affidavit from Jones provided the definition and eliminated any issues of material fact, thus making summary judgment appropriate.  Jones's affidavit described the Morrell package as including only "pass through assistance," which is money from the state to cities for projects designed to benefit American Foods, and direct loans and grants from the state.  Kuehne testified that John Morrell & Co. received pass through assistance and direct loans from the state as part of a financing package it received and that the phrase in the contract was a "shorthand way" to refer to the funding John Morrell received from the state.  Kuehne later filed an affidavit in which he stated that "loans from the State of South Dakota, City of Huron[,] loan [sic] and the City of Mitchell" were included in the phrase "John Morrell Incentive Package."

Like the district court, we find that  Kuehne's deposition testimony removes the ambiguity from the definition of the Morrell package.  Only financing from the State of South Dakota, either in the form of direct funding or as pass-through funding, relates to the Morrell package.

We turn, then, to the actual success fees the district court awarded as part of the Morrell package.

1.     The Greater Huron Development Corp. loan

American Foods received a $950,000 non-forgivable loan from the Greater Huron Development Corporation on September 8, 1994. American Foods paid Orion a success fee for this loan on October 21, 1994. American Foods claims that it overpaid the success fee because this loan should have been placed under (b)(6) instead of (b)(5) because it was non-forgivable. Orion acknowledges that the loan was non-forgivable and that the district court erred in granting success fees under (b)(5), which covers only forgivable loans and grants. Orion argues, however, that this loan was not related to the Morrell package under the definition the district court established, and so fees should be calculated under (b)(1). We conclude that Orion is correct in this assertion. Because the Morrell package only refers to funding from the state, this loan should be placed under (b)(1). Even though the percentage fees under (b)(5) and (b)(1) are the same, we must remand to the district court to determine the fee under (b)(1) and not (b)(5), because moving loans from one subsection to another will change the aggregate amounts within each subsection and thus affect the success fee calculations.


2.     The Huron grant

The State of South Dakota awarded a $250,000 Consolidated Water Facilities Construction Program grant to the City of Huron on March 23, 1995. The city was to use this grant to improve the city's storm sewers. Orion helped arrange this grant because the project was needed to provide the capacity necessary for American Foods's Huron plant. The district court granted summary judgment to Orion on the grant and awarded fees under subsection (b)(5).


American Foods argues that the district court was mistaken for two reasons. First, it asserts that this grant is not within the Morrell package. As described above, however, the Morrell package includes pass-through assistance from the state to municipalities where the assistance was designed to benefit American Foods. Thus,

-12-

the Huron grant was related to the Morrell package. Second, American Foods asserts that the Agreement does not cover loans and grants to entities other than itself, or at least was ambiguous as to whether such payments were included. However, the Agreement does not specifically limit success fees to monies paid directly to American Foods. The parties could have inserted such a limit action, but did not. Thus, the Agreement includes all loans and grants designed to benefit American Foods. American Foods benefitted from this financing, because the city improved the sewers and wastewater treatment facilities that serviced its plant. Accordingly, the district court did not err in awarding fees under subsection (b)(5) on this grant.

## C. Fees granted under subsection (b)(6)

### 1. The Huron loan

The South Dakota Conservancy District, which is funded through the South Dakota Department of Environment and Natural Resources, gave a $2.7 million loan to the City of Huron on November 8, 1995. This loan was earmarked to expand Huron's wastewater treatment facilities. Like the Huron grant, this loan was designed to benefit American Foods by providing sufficient wastewater facilities to serve its Huron plant.

The district court granted summary judgment to Orion as to the Huron loan and awarded success fees under (b)(6). American Foods raises the same two arguments here as it did regarding the Huron grant: that this loan was not related to the Morrell package and that the Agreement does not cover loans to entities other than American Foods. We reject both arguments for the same reasons stated above. The district court properly placed the Huron loan under subsection (b)(6).

2.    The Mitchell loan

On March 6, 1995, American Foods received a $100,000 loan from the City of Mitchell.  The district court granted summary judgment to Orion as to this loan and assessed fees under (b)(6).  Again, American Foods argues that summary judgment was inappropriate, because there is ambiguity as to whether this loan is part of the Morrell package.  As described above, the Morrell package includes only financing from the State of South Dakota.  As a loan from the city, the Mitchell loan was not part of that package.

American Foods argues that if we remove the Mitchell loan from (b)(6), we should not place this loan under (b)(1) on summary judgment, because there is ambiguity as to the meaning of the phrase "new senior secured debt" in (b)(1).  The district court found that the Mitchell loan was either new senior secured debt, since it was secured by machinery and equipment, or was subordinated debt, and so covered under (b)(1).  Because there is no ambiguity as to the meaning of the phrases "new senior secured debt" and "subordinated debt" in (b)(1), this ruling was correct.  As described above, this loan is not covered under (b)(6), because the Morrell package does not include city loans.  The award of fees under (b)(6) was inconsistent with the district court's holding regarding the scope of the Morrell package.  Success fees should be awarded under (b)(1), and thus we reverse and remand for the entry of an award under that subsection.

3.    The Areawide loan

American Foods received a $200,000 loan from the Area Wide Business Council for the City of Mitchell within twelve months of terminating the Agreement.  The district court awarded a fee under (b)(6) on summary judgment, holding that the loan was related to the Morrell package.  Orion argues that the district court should have placed this loan under (b)(1) and awarded a higher success fee.   The district court's holding regarding this loan is inconsistent with its legal conclusions regarding

the meaning of the Morrell package. The loan did not come from the State of South Dakota and thus was not related to the Morrell package. Success fees should be awarded under (b)(1), and we reverse and remand for the entry of an award under that subsection.

4.      The REDI loan

After termination of the Agreement, American Foods received a $750,000 REDI loan from the South Dakota Board of Economic Development. Consistent with its legal conclusions, the district court on summary judgment found that this was a (b)(6) loan and granted a fee accordingly. We conclude that the district court did not err in doing so.

**D.      Summary**

The district court correctly interpreted the minimum threshold provisions of the Agreement. However, it placed some loans and grants under the incorrect provisions. The correct arrangement of the financing at issue in this case is as follows. The following instances of financing fall within (b)(1): the CIT loan, the Cryovac lease, the Greater Huron Development Corp. loan, the Mitchell loan, and the Areawide Business Council loan. The Huron grant and the undisputed Governor's Office of Economic Development loan fall within (b)(5). Finally, the Huron loan and the REDI loan fall within (b)(6).

Furthermore, the district court misconstrued the contractual provision governing when success fees were owed to Orion. Relying on the plain language of the Agreement, we conclude that "completion of a component of . . . financing" occurred when additional financing procured from CIT with Orion's assistance became available for use by American Foods. As such, the $9 million increase in maximum credit was "completed" upon execution of the amendments to the CIT

revolving loan, and Orion is entitled to a success fee calculated at 100 percent under subsection (b)(1).

We remand the case to the district court with instructions to calculate the success fees according to the correct arrangement cited above and to recalculate the success fees on the CIT loan. In doing so, the district court should recalculate the fees for all the loans, including the loans it placed under the correct provisions, because shifting a few of the loans from one subsection to another will change the aggregate amounts within each subsection and thus alter the impact of the threshold levels.

## III.

Orion seeks prejudgment interest under S.D. Codified Laws § 21-1-13.1 (Michie 2001 Supp.), which authorizes interest from the "day the loss or damage occurred." The South Dakota Supreme Court has stated that prejudgment interest is allowable only when the "exact amount of damages is known or readily ascertainable." Fanning v. Iversen, 535 N.W.2d 770, 775 (S.D. 1995) (quotation omitted). The district court applied this standard and awarded interest from the date Orion demanded payment, April 6, 1995, or any date after that on which American Foods received grants or loans subject to success fees. A court should not grant prejudgment interest "if damages are uncertain until determined by the trier of fact. Thus, the test of awarding interest is not whether liability was clear, but whether (assuming liability) the damages were reasonably ascertainable by reference to prevailing markets." City of Sioux Falls v. Kelley, 513 N.W.2d 97, 112 (S.D. 1994) (internal citations and quotations omitted). Here, because of the poorly drafted contract provisions and the resulting questions of which subsections would cover which loans, the damages were uncertain until Orion made demand for payment. Thus, the district court did not err in granting prejudgment interest from the date of

Orion's demand.  However, we conclude the district court erred in not awarding prejudgment interest on the CIT loan from the date of Orion's demand.

## IV.

In South Dakota, parties generally may contract for attorney fees.  Assman v. J.I. Case Credit Corp., 411 N.W.2d 668, 671 (S.D. 1987).  The Agreement contains an attorney fees provision under which American Foods agreed to reimburse Orion for any "action or legal proceeding" regarding the services Orion provided.  The district court held that this provision violated S.D. Codified Laws § 15-17-39 (Michie 2001), which states:  "Any provision contained in any note, bond, mortgage or other evidence of debt that provides for payment of attorneys' fees in case of default of payment or foreclosure is against public policy and void, except as authorized by specific statute."  The district court held that the Agreement was "evidence of debt" and voided the attorney fees provision.  In so ruling, the district court relied on Vanderwerff Implement, Inc. v. McCance, 561 N.W.2d 24 (S.D. 1997).  In Vanderwerff, the South Dakota Supreme Court held that the retail sales contract covering a certain piece of farm equipment constituted evidence of debt within the meaning of § 15-17-39.  At issue in the present case is an agreement for payment of fees for certain services.  A more apt analogy is the employment contract at issue in Overholt Crop Ins. Service Co. v. Travis, 941 F.2d 1361 (8th Cir. 1991), in which we held that the predecessor statute to S.D. Codified Laws § 15-17-39 did not apply to employment contracts.  Id. at 1370-71.  The service contract in this case, like the employment contract in Overholt, does not constitute evidence of a debt owed by one party to the other, but instead creates mutual obligations to provide services and payment therefor.

The phrase "evidence of debt" as used in the statute refers to debtor-creditor relationships, such as those in bonds, mortgages, and promissory notes, not to every

contract where one party is obligated to pay money to the other. Moreover, the phrase "evidence of debt" when used elsewhere in the South Dakota Codified Laws is connected with banking or other debtor-creditor relationships. See, e.g., S.D. Codified Laws § 7-25A-25 (Michie 1993) (improvement districts' authority to issue notes); S.D. Codified Laws § 15-2-18 (Michie 2001) (limitations on actions on instruments circulated as money); S.D. Codified Laws § 21-17A-3 (Michie 1987) (requirements for writ of attachment for a debt); S.D. Codified Laws § 21-47-3 (Michie 1987) (actions to foreclose real property mortgages); S.D. Codified Laws § 21-48-18 (Michie 1987) (same); S.D. Codified Laws § 44-10-10 (Michie 1997) (restricting sale of evidences of debt pledged to pledgee); S.D. Codified Laws § 47-8-1.1 (Michie 2000) (definition of transacting business); S.D. Codified Laws § 51A-4-1 (Michie 1990) (powers of banks); and S.D. Codified Laws § 58-26-3 (Michie 2000) (determining value of investments by insurance companies).

We conclude that because the Agreement is not "evidence of debt" within the meaning of S.D. Codified Laws § 15-17-39, the attorney fees provision is valid. Accordingly, we reverse the district court's decision denying attorney fees and remand to the district court for a determination of an award of reasonable attorney fees and collection costs.

## V.

In summary, the district court correctly interpreted the applicable minimum threshold provisions of the Agreement. We reverse the success fees award, however, because the district court placed certain loans under the incorrect subsections and incorrectly calculated the success fees award on the CIT loan. Accordingly, we remand the case to the district court with directions to enter success fees under the appropriate subsections and to recalculate the success fees on the CIT loan, as described above. We reverse the district court's award of prejudgment interest and

remand to the district court to award prejudgment interest on the CIT loan from April 6, 1995. We reverse the district court's denial of attorney fees and remand for the determination of a reasonable fee award.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.